UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| BRUCE DENBY,<br>    Plaintiff | CIVIL ACTION NO.: |
| v. | TRIAL BY JURY DEMANDED |
| PRESTIGE AUTO CARS LLC and<br>NUTMEG STATE FINANCIAL CREDIT UNION,<br>    Defendants | FEBRUARY 21, 2018 |

## COMPLAINT

### I. INTRODUCTION

1. This is an action brought by a consumer against an automobile dealership for breach of the implied warranty of merchantability under the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. §§ 2301 *et seq.* Plaintiff also asserts pendent state law claims for breach of express warranty and violations of the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. §§ 42-110 *et seq.*

### II. PARTIES

2. Bruce Denby ("Plaintiff") is a consumer and natural person residing in West Hartford, Connecticut.

3. Prestige Auto Cars LLC ("Prestige") is a Connecticut limited liability company located in New Britain, Connecticut.

4. Nutmeg State Financial Credit Union ("NSFCU") is a credit union located in Rocky Hill, Connecticut that regularly accepts assignment of retail installment sales contract from Connecticut dealerships.

1

### III. JURISDICTION

5. This Court has jurisdiction over this action pursuant to 15 U.S.C. § 2310(d)(1)(B) and 28 U.S.C. § 1331. Specifically, the total sale price for the Vehicle as alleged below is $25,745. When this amount is combined with Plaintiff's claim for common law punitive damages, which are based upon the attorney's fees incurred by him and which are expected to exceed $50,000, then the total amount in controversy under the Magnuson-Moss claim exceeds $50,000. Supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. § 1367.

6. This Court has jurisdiction over Prestige and NSFCU, because Prestige is organized under the laws of the state of Connecticut and NSFCU regularly conducts business in this state.

7. Venue in this Court is proper, because Plaintiff resides in Connecticut and the transaction occurred in this state.

### IV. FACTUAL ALLEGATIONS

8. On or about September 21, 2016, Plaintiff visited Prestige because he was interested in purchasing a vehicle for personal use.

9. Plaintiff met with Prestige salesman Jason Napoletano ("Napoletano"), and he showed Plaintiff a 2016 Honda Accord (the "Vehicle").

10. Plaintiff asked Anthony of Prestige if the Vehicle had been in an accident, and Anthony falsely told him the Vehicle was used as a demonstrator at a Honda dealership and that it had not been in any accidents or natural disasters.

11. During Plaintiff's test drive of the Vehicle, the airbag light was on.

12. When Plaintiff returned from the test drive, he told Napoletano that the air bag light was on, and Napoletano told him Prestige would repair it.

13. Plaintiff also requested, and Prestige agreed, to have a sunroof installed in the Vehicle at a cost of $750.

14. Prestige told Plaintiff that the sunroof had a lifetime warranty, but he was not provided with paperwork for the warranty.

15. Based on Prestige's representations that the Vehicle was a former demonstrator that had not been in any accidents and that Prestige would repair the air bag problem, Plaintiff agreed to purchase the Vehicle for $24,995.

16. Prestige prepared a Purchase Order that listed a Cash Price of $25,745.00, which price included the $750 cost of the sunroof.

17. Plaintiff paid Prestige a down payment of $500.00 and financed a balance of $30,717.02 pursuant to a retail installment sales contract (the "Contract") that was assigned to NSFCU.

18. The Contract listed a Cash Price of $26,798.02, including $1,803.02 in sales tax, an amount that was $750 less than the cash price listed in the Purchase Order.

19. Although Prestige included the charge for the sunroof in the Purchase Order, it failed to include the cost of the sunroof in the Contract, in violation of Conn. Gen. Stat. § 36a-771(a) which requires retail installment contracts to contain all the agreements of the parties.

20. The Purchase Order and Contract included a dealer processing fee of $399 even though the Vehicle sticker did not disclose this fee and Plaintiff was not provided with any disclosure of the fee as required by Conn. Gen. Stat. § 14-62a.

21. The Vehicle was sold with a warranty that it would be mechanically operational and sound for the lesser of 60 days or 3000 miles.

22. Prestige did not permit Plaintiff to take delivery of the Vehicle on the date he signed the purchase paperwork because Prestige told him it had to conduct an inspection of the Vehicle.

23. Prestige did not provide Plaintiff with copies of the contract documents at the time he signed the documents.

24. When Plaintiff took delivery of the Vehicle approximately three weeks later, the air bag light was still illuminated.

25. Unbeknownst to Plaintiff at the time of purchase, the Vehicle had been in a significant accident that involved airbag deployment and was not properly repaired, rendering it unsafe to drive.

26. Plaintiff learned of the prior accident when he read a Carfax report that showed that, on January 21, 2016, the Vehicle had been involved in a significant accident that involved airbag deployment.

27. On or about September 20, 2017, Plaintiff had the Vehicle inspected by an independent auto body expert to obtain an assessment of the extent of any prior damage.

28. The independent expert determined that the Vehicle had been involved in an event that damaged the right front corner and right rear quarter panel and caused

structural damage, and damage to the air bag system, and that the Vehicle is unsafe to drive and was not in merchantable condition.  The expert further opined that any automotive professional would be able to clearly see that the Vehicle had been wrecked and poorly repaired.

29.   On information and belief, Prestige knew of the Vehicle's history and structural damage, because the damage would have been apparent to any automotive professional while performing the mandatory used vehicle safety inspection required by Conn. Gen. Stat. § 14-62(g).

30.   Absent the structural damage, the Vehicle would have had a fair retail value of approximately $23,800 but, because of its condition, it had a fair retail value of approximately $13,200 at the time of sale.

31.   Plaintiff had agreed to purchase the Vehicle and accepted delivery unaware of its defects.

## V.  CAUSES OF ACTION

### A.  BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY

32.   This transaction was subject to the MMWA.

33.   A warranty that the Vehicle was in merchantable condition was implied by the contract by operation of Conn. Gen. Stat. § 42a-2-314.

34.   Prestige breached the implied warranty of merchantability, Conn. Gen. Stat. § 42a-2-314, because the Vehicle would not pass in trade without objection, was not fit for the purposes that motor vehicles are ordinarily used, or both.

35.     Additionally, the Vehicle was not in merchantable condition because its structural deficiencies present a safety hazards to its occupants and render the Vehicle unsafe to drive.

36.     It is not possible for Prestige to cure the breach of implied warranty of merchantability.

37.     Prestige's breaches of the implied warranty of merchantability were tortious in nature, in bad faith, were wanton and malicious, outrageous, and were undertaken with bad motive and with a reckless indifference to the Plaintiff's interests and the injury that he sustained.

38.     Prestige is liable to Plaintiff for damages sustained for its breach.

39.     Prestige and NSFCU are liable to Plaintiff for his damages, including common law punitive damages, and attorney's fees and costs under MMWA.

40.     The total amount claimed under this count, including common law punitive damages, is in excess of $50,000.

## B.  BREACH OF EXPRESS WARRANTY

41.     Prestige's statements regarding the condition and history of the Vehicle constituted an express warranty pursuant to Conn. Gen. Stat. § 42a-2-313. Specifically, Prestige told Plaintiff that the Vehicle was formerly a demonstrator at a Honda dealership and that it had not been in any accidents.

42.     Prestige breached the express warranty because the Vehicle had significant structural damage that was not properly repaired at the time of sale to Plaintiff and the Vehicle was unsafe to drive and not in merchantable condition.

43. Prestige breached the express warranty, because the Vehicle was not safe to operate and should not have passed the safety inspection required by Conn. Gen. Stat. § 14-62(g).

44. Prestige's breaches of express warranty were tortious in nature, in bad faith, were wanton and malicious, outrageous, and were undertaken with bad motive and with a reckless indifference to the Plaintiff's interests and the injury that he sustained.

45. Prestige and NSFCU are liable to Plaintiff for his damages, including common law punitive damages, plus attorney's fees and costs under the MMWA, 15 U.S.C. § 2310(d).

### C. BREACH OF WRITTEN WARRANTY

46. The Vehicle is a consumer product as that term is defined in § 2301(1) of the MMWA.

47. Prestige's 60 day or 3,000 mile warranty constituted a written warranty under the MMWA, 15 U.S.C. § 2301(6)(a).

48. Prestige breached the written warranty because Vehicle was unsafe to drive and not in merchantable condition at the time of sale to Plaintiff.

49. Prestige's breaches of written warranty were tortious in nature, in bad faith, were wanton and malicious, outrageous, and were undertaken with bad motive and with a reckless indifference to the Plaintiff's interests and the injury that he sustained.

50.  Prestige and NSFCU are liable to Plaintiff for his damages, including common law punitive damages, plus attorney's fees and costs under the MMWA, 15 U.S.C. § 2310(d).

### D.  CONNECTICUT UNFAIR TRADE PRACTICES ACT

51.  Prestige has engaged in unfair acts and practices in trade or commerce in violation of Conn. Gen. Stat. § 42-110a *et seq.* in connection with the transaction, as follows:

   a. It knowingly sold the Vehicle even though it had structural damage;

   b. It knowingly sold the Vehicle even though it was in an unsafe condition;

   c. It failed to disclose the Vehicle's defects in a CT DMV K-208 disclosure form as required by Conn. Gen. Stat. § 14-62(g);

   d. It failed to perform a safety inspection on the Vehicle as required by Conn. Gen. Stat. § 14-62(g) or, if it did perform a safety inspection, it sold the Vehicle notwithstanding the defects which would have been apparent if such an inspection had been performed and failed to note the defects;

   e. It made false and misleading statements regarding the history and condition of the Vehicle, a *per se* violation of CUTPA pursuant to Conn. Agency Reg. § 42-110-28(b)(23);

   f. It charged a dealer conveyance fee of $399 without making the disclosures required by Conn. Gen. Stat. § 14-62(b)(1) and 14-62a;

   g. It failed to include the cost of a sunroof and the payments made for that sunroof, which charges were included in the purchase order, in the retail installment contract, a violation of the requirement of Conn. Gen. Stat. §

    36a-771(a) that the retail installment contract contain all the agreements of the parties;

  h. It told Claimant that he was getting a lifetime warranty for the sunroof, but he was never provided with any documentation or written warranty despite demand;

  i. It violated Conn. Gen. Stat. § 36a-771(a) and Conn. Gen. Stat. § 14-62(a) by failing to provide Claimant with the retail installment sales contract and purchase order at the time that he executed those documents;

  j. It violated the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.,* by not providing the disclosures required by § 1638 prior to consummation of the transaction; and

  k. It violated the Truth in Lending Act, 15 U.S.C. § 1638, and, consequently, the Retail Installment Sales Finance Act, Conn. Gen. Stat. § 36a-771(b), by not accurately disclosing the annual percentage rate of interest in that there was a substantial delay between the actual extension of credit upon delivery of the Accord.

52. As a result of Prestige's conduct, Plaintiff has suffered ascertainable losses of money or property, including the cost of inspection, diminished value of the Vehicle, and the payment of far more than the Vehicle's value.

53. For Prestige's violations of CUTPA, Plaintiff is entitled to his actual damages plus punitive damages, costs and a reasonable attorney's fee.

54. NSFCU is subject to these claims and to Plaintiff's defenses under the Contract in accordance with the terms of the Contract and pursuant to Conn. Gen. Stat. § 52-572g.

### E.  RETAIL INSTALLMENT SALES FINANCING ACT – 36a-786

55. Prestige's conduct, as aforedescribed, constituted willful violations of RISFA. Specifically, the Purchase Order and Contract did not reconcile, because the Purchase Order reflected the $750 charge for the sunroof, but the Contract did not include this charge.

56. Prestige also violated RISFA by not accurately disclosing the annual percentage rate of interest in that there was a substantial delay between the actual extension of credit and delivery of the Vehicle to Plaintiff.

57. NSFCU has retained the benefit of the contract notwithstanding these violations.

58. Plaintiff is entitled to an order that there are no finance charges recoverable under the Contract pursuant to Conn. Gen. Stat. § 36a-786.

Wherefore, Plaintiff claims actual damages, punitive damages, attorney's fees, and an order that there are no finance charges recoverable under the Contract.

        PLAINTIFF, BRUCE DENBY

        By: */s/ Daniel S. Blinn*
            Daniel S. Blinn (ct02188)
            dblinn@consumerlawgroup.com
            Brendan L. Mahoney (ct28939)
            bmahoney@consumerlawgroup.com
            Consumer Law Group, LLC
            35 Cold Spring Rd. Suite 512
            Rocky Hill, CT  06067
            Tel. (860) 571-0408
            Fax. (860) 571-7457